**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KHALIL JANJUA,
*Plaintiff-Appellant*,

v.

DONALD NEUFELD, Associate
Director, USCIS Nebraska Service
Center; KENNETH T. CUCCINELLI,
Acting Director, USCIS; UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICE; KEVIN K.
MCALEENAN, Acting Secretary, U.S.
Department of Homeland Security;
U.S. DEPARTMENT OF HOMELAND
SECURITY; WILLIAM P. BARR, U.S.
Attorney General,
*Defendants-Appellees*.

No. 17-16558

D.C. No.
15-05475 EMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted March 14, 2019
San Francisco, California

Filed August 9, 2019

Before: J. Clifford Wallace, A. Wallace Tashima,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Tashima

**SUMMARY**[*]

### Immigration

Affirming the district court's grant of summary judgment in favor of United States Citizenship and Immigration Service ("USCIS") and related defendants, the panel held that (1) for purposes of issue preclusion, an issue was "actually litigated" only if it was raised, contested, and submitted for determination in a prior adjudication, and (2) the issue of whether Khalil Janjua was inadmissible on terrorism-related grounds was not actually litigated in his asylum proceedings and, therefore, issue preclusion did not apply to his adjustment of status proceedings.

Janjua, a native and citizen of Pakistan, was granted asylum and then applied for adjustment of status. USCIS denied his application on the ground that he was inadmissible for having supported a Tier III terrorist organization in connection with his involvement with the Muhajir Qaumi Movement in Pakistan.

Janjua sought review of USCIS's decision in the district court. Because the same terrorism-related grounds for

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

inadmissibility that bar asylum also bar adjustment of status, Janjua argued that issue preclusion prevented the government from raising terrorism-related inadmissibility in the adjustment of status proceedings because the immigration judge had necessarily concluded that Janjua was not inadmissible on these grounds when he granted Janjua asylum. The district court concluded that issue preclusion did not apply and granted the government's motion for summary judgment.

Issue preclusion, also known as collateral estoppel, bars the relitigation of an issue where four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits. Here, the central question was whether Janjua's inadmissibility for supporting a Tier III terrorist organization was "actually litigated" in his asylum proceeding.

Assuming without deciding that issue preclusion applies in immigration adjustment of status proceedings, the panel held, consistent with the Restatement (Second) of Judgments and this court's sister circuits, that an issue is "actually litigated" when an issue is raised, contested, and submitted for determination. The panel rejected Janjua's argument that an issue should be considered actually litigated if it was *implicitly* raised or if the parties had a full and fair opportunity to raise it, explaining that such a standard would conflate the separate requirements that an issue be actually decided in the prior proceedings and necessary to decide the merits.

Because the issue of whether Janjua was inadmissible on terrorism-related grounds was not raised, contested, and submitted for determination at his asylum proceeding, the panel concluded that the issue was not actually litigated and, thus, issue preclusion did not apply.

## COUNSEL

Morgan Russell (argued), San Francisco, California; Robert B. Jobe, and Anna Benvenue, Law Office of Robert B. Jobe, San Francisco, California, for Plaintiff-Appellant.

Kathrine J. Shinners (argued) and Brian C. Ward, Senior Litigation Counsel; Gisela A. Westwater, Assistant Director; William C. Peachey, Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

TASHIMA, Circuit Judge:

In this case we address, as a matter of first impression in our Circuit, the standard for determining whether an issue was "actually litigated" in a previous adjudication for purposes of issue preclusion, also known as collateral estoppel. We hold that an issue was actually litigated only if it was raised, contested, and submitted for determination in the prior adjudication.

Khalil Janjua ("Janjua"), a noncitizen, was granted asylum in the United States. Shortly thereafter, he applied for

adjustment of status, which was denied on the ground that he was inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i) for having supported a Tier III terrorist organization.  To be eligible for asylum, an applicant must not be inadmissible under § 1182(a)(3)(B).  Adjustment of status imposes the same requirements.  Janjua thus argues that because he was granted asylum—and therefore was necessarily *not* found inadmissible on account of terrorism-related activities under § 1182(a)(3)(B)(i) —issue preclusion bars the government from now denying his adjustment of status application on that ground.  The question of whether Janjua was inadmissible on terrorism-related grounds was never raised,  contested, or submitted for determination at Janjua's asylum proceeding. Janjua's  work for the relevant organization, however, was discussed at length.  Assuming without deciding that issue preclusion applies in adjustment of status proceedings, the central question before us is whether the issue of terrorism-related inadmissibility was actually litigated at Janjua's asylum proceeding for purposes of issue preclusion. Because that issue was not raised, contested, or submitted for determination at Janjua's asylum proceeding, it was not actually litigated.   Issue preclusion does not bar the government from disputing that issue in Janjua's adjustment of status proceeding.  We therefore affirm.

### BACKGROUND

## I.   Factual Background

Janjua is a native and citizen of Pakistan.  As a Muhajir[1] living in Pakistan, Janjua joined the Muhajir Qaumi

---

[1] Muhajir refers to those people who are or are descended from Muslim immigrants from India to Pakistan.

Movement ("MQM"), a political group. Janjua worked on behalf of the MQM, "attending . . . meetings, organizing . . . rallies, distributing . . . flyers," and advocating for the group's message during elections. As a result of his affiliation with and work for the MQM, Janjua was arrested and beaten by the police and by members of the opposition party numerous times while in Pakistan. Janjua eventually fled Pakistan in July 1998, entering the United States without inspection in Arizona on January 17, 1999.

## II.  Procedural Background

In November 1999, Janjua applied for asylum with the legacy Immigration and Naturalization Service. In January 2000, Janjua's application was rejected, and the government served Janjua with a Notice to Appear ("NTA") in removal proceedings, charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. The NTA did not charge him with inadmissibility under any terrorism-related inadmissibility grounds.

Janjua conceded removability, but submitted applications for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture ("CAT") predicated on his fear of persecution on the basis of his membership in the MQM. At Janjua's merits hearing, the immigration judge ("IJ") admitted into evidence Janjua's written statement regarding his participation in MQM activities and meetings, and Janjua testified at length about what he did as a member of the MQM and the abuse he suffered as a result of his membership. At one point, the government attorney focused on the MQM's reputation for violence, noting that "the Country Reports on Pakistan put out by the Department of

State for the United States Government suggests that the MQM has demonstrated its willingness to use violence and intimidation to further its objectives" and asking whether Janjua had ever "used violence and intimidation to further the goals of the MQM," to which Janjua responded, "Never." Neither Janjua's written statement nor his oral testimony discussed whether Janjua collected funds or donations on behalf of the MQM, although he did at one point briefly discuss the annual donation his father would make to the MQM. At no point in the hearing was the issue of whether MQM would qualify as a terrorist organization ever raised or discussed. Then, as remains the case today, asylum was prohibited if an applicant was inadmissible for engaging in terrorist activity, which included knowingly providing material support to or soliciting funds on behalf of a designated terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc), (VI)(cc).

The IJ denied Janjua's applications for asylum, withholding of removal, and protection under CAT, but the Board of Immigration Appeals ("BIA") reversed and remanded on the issue of Janjua's credibility. On remand, the IJ eventually granted Janjua's application for asylum in April 2007, without a written opinion. By that time, Congress had expanded terrorism-related inadmissibility to also cover so-called Tier III terrorist organizations, "group[s] of two or more individuals, whether organized or not, which engage[] in, or has a subgroup which engages in" certain terrorist activities. 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc), (VI)(dd).

In December 2008, Janjua filed a Form I-485, applying for adjustment of status to permanent residency pursuant to 8 U.S.C. § 1159. After waiting years without adjudication of his application, Janjua filed a petition for a writ of mandamus

in the United States District Court for the Northern District of California, alleging unlawful delay by the government and asking the court compel the United States Citizenship and Immigration Service ("USCIS") adjudicate his adjustment of status application. USCIS responded by requesting additional evidence from Janjua regarding his activities with MQM, which he provided.

USCIS denied Janjua's application on August 2, 2016, on the ground that he was inadmissible under § 1182(a)(3)(B)(i)(I) because he "afford[ed] material support [to]" and "solicit[ed] funds" for MQM. which qualified as a Tier III terrorist organization. *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc), (VI)(dd).    Thus, USCIS concluded that Janjua was inadmissible under § 1182(a)(3)(B)(i)(I)—and therefore barred from receiving adjustment of status—because he had engaged in terrorist activity by supporting the MQM.

Following this, Janjua amended his complaint to challenge USCIS' denial of his application.  Because the same terrorism-related grounds for inadmissibiliaty that bar asylum also bar adjustment of status, s*ee* 8 U.S.C. § 1158(b)(2)(A)(v) (asylum); § 1159(b)(5), (c) (adjustment of status), Janjua argued that issue preclusion prevented the government from raising terrorism-related inadmissibility in the adjustment of status proceedings because the IJ had necessarily concluded that Janjua was not inadmissible on these grounds when he granted Janjua asylum. Janjua moved for summary judgment on the same basis. The government filed a cross-motion for summary judgment, arguing that issue preclusion did not apply to Janjua's adjustment application and, even if it did, the issue was not identical, previously litigated, or decided.

On July 6, 2017, the district court denied Janjua's motion and granted the government's. The district court first held that issue preclusion does apply in adjustment of status proceedings governed by the Immigration and Nationality Act ("INA"). The district court agreed with the government, however, that the elements of issue preclusion were not met here because the issue had not been "actually litigated" in Janjua's asylum proceedings because it was not explicitly raised and contested. Accordingly, the district court granted the government's motion for summary judgment.[2] Janjua timely appealed.

## STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's decision to grant summary judgment, *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 920 (9th Cir. 2018), and its application of collateral estoppel, *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

## DISCUSSION

Issue preclusion, also known as collateral estoppel, "bars the relitigation of issues actually adjudicated in previous litigation." *Id.* For issue preclusion to apply, four conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair

---

[2] The court further explained that the only remaining issue was whether USCIS had acted arbitrarily or capriciously in recognizing the MQM as a Tier III terrorist organization, which Janjua had not contested and therefore waived.

opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (reciting the four conditions). Here, the central question is whether Janjua's inadmissibility for supporting a Tier III terrorist organization was actually litigated in the prior adjudication.[3] Assuming without deciding that issue preclusion applies in immigration adjustment of status proceedings, we hold that Janjua's inadmissibility on terrorism-related grounds was not actually litigated, because the issue was not in fact raised, contested, or submitted to the IJ for determination in Janjua's asylum proceeding.

Unlike claim preclusion, also known as res judicata, issue preclusion requires that an issue must have been "actually and necessarily determined by a court of competent jurisdiction" to be conclusive in a subsequent suit. *Montana v. United States*, 440 U.S. 147, 153 (1979). Thus, issue preclusion does not apply to those issues that could have been raised, but were not: "the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points *controverted*, upon the determination of which the finding or verdict was rendered.'" *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 593 (1974) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948) (in turn, quoting *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876))) (emphasis added),

---

[3] Janjua does not dispute that he aided MQM, nor does he appear to dispute MQM's characterization by USCIS as a Tier III terrorist organization.

*superseded on other grounds by statute as stated in Miles v. Apex Marine Corp.*, 498 U.S. 19, 30 n.1 (1990).

Accordingly, when applying issue preclusion, we have consistently looked to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination. *See Oyeniran*, 672 F.3d at 804, 806 (explaining that the question of whether petitioner's father was tortured in Nigeria was "actually litigated" because petitioner presented evidence on the issue, the IJ specifically found so, and the government challenged that claim "[a]t every stage of the administrative proceedings"); *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997) (explaining that the issue was actually litigated, even though the prior court did not explicitly address it in its decision, because the parties had raised and contested the issue and the district court had necessarily decided the issue by reaching its decision); *see also Montana*, 440 U.S. at 156–58 (applying issue preclusion and explaining that "[a] review of the record in [the first adjudication] dispels any doubt that the plaintiff there raised and the Montana Supreme Court there decided the precise constitutional claim that the United States advances here" and therefore "the 'question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged' adversely to the Government in state court") (internal citation omitted).

Thus, consistent with the Restatement (Second) of Judgments and our sister circuits, we hold that an issue is actually litigated when an issue is raised, contested, and submitted for determination. Restatement (Second) of Judgments § 27, cmt. (d) (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated

. . . ."); *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 272
(5th Cir. 2005) ("The requirement that an issue be 'actually
litigated' for collateral estoppel purposes simply requires that
the issue is raised, contested by the parties, submitted for
determination by the court, and determined."); *Swentek v.
USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) ("Collateral
estoppel is appropriate where the identical issue was 'actually
litigated, that is, contested by the parties and submitted for
determination by the court . . . .'" (citation omitted)),
*abrogated on other grounds as recognized by Mikels v. City
of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999); *McLaughlin
v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) ("First, the
same issue 'must have been actually litigated, that is,
contested by the parties and submitted for determination by
the court.'" (citation omitted)); *see also* 18 James Wm.
Moore et al., Moore's Federal Practice § 132.03(2)(a) (2018)
("The 'actually litigated' requirement simply requires the
issue to have been raised, contested by the parties, submitted
for determination by the court, and determined.").[4]   Under
this standard, neither an issue that could have, but was not,
asserted (such as an affirmative defense) nor an issue that was
raised but admitted was "actually litigated." *See* Restatement
(Second) of Judgments § 27, cmt. (e) (1982) ("A judgment is
not conclusive in a subsequent action as to issues which
might have been but were not litigated and determined in the
prior action . . . .   An issue is not actually litigated if the
defendant might have interposed it as an affirmative defense
but failed to do so; nor is it actually litigated if it is raised by
a material allegation of a party's pleading but is admitted

---

[4] Our Circuit's test for issue preclusion already requires that an issue
be "decided in the prior proceedings," *Oyeniran*, 572 F.3d at 806, so there
is no need to require that an issue was "determined" for it to have been
"actually litigated."

(explicitly or by virtue of a failure to deny) in a responsive pleading.").

Janjua argues, however, that an issue should be considered actually litigated if it was *implicitly* raised or if the parties had a full and fair opportunity to raise it. But such a standard would conflate the separate requirements that an issue be "actually . . . decided in the prior proceedings" and "necessary to decide the merits." *Oyeniran*, 672 F.3d at 806. Issues that are necessarily decided include all issues that must have been decided for a judgment to stand—when asylum is granted, the IJ necessarily decides that none of the grounds for inadmissibility that automatically bar relief applies—regardless of whether they were explicitly raised or contested. *See Clark*, 966 F.2d at 1321. Even if an issue is not explicitly raised, if it is necessary to the ultimate determination, it is "necessarily decided." But if an issue is actually litigated if it was implicitly raised, the requirement of actually litigated is rendered meaningless.

Further, the standard urged by Janjua—that an issue is actually litigated if it was implicitly raised—would expand the province of issue preclusion and encroach upon the province of claim preclusion. Both claim preclusion and issue preclusion are meant to preserve judicial resources, minimize inconsistent decisions, and prevent superfluous suits. *See Allen v. McCurry*, 449 U.S. 90, 95 (1980). But one of the key distinctions between claim preclusion and issue preclusion is that the former bars relitigation of any and all matters that were or could have been raised at that adjudication, *see id.* at 94, while the latter precludes relitigation of only those issues that were "actually and necessarily determined," *Montana*, 440 U.S. at 153, *i.e.*, those that were raised, contested, submitted for determination, and

determined.  The standard urged by Janjua would allow much broader preclusion, including of issues implicitly—but not in fact—raised.  And precluding an issue that was not actually litigated—*i.e.*, not raised, contested. and submitted for determination—does not conserve judicial resources or facilitate reliance on the earlier judgment because resources were not expended on the issue  in the first place.  To the extent that Janjua argues that the issue should be foreclosed because it was *implied* or *ought* to have been raised by the government, that is precisely the sort of preclusion reserved for *claim* preclusion, not issue preclusion.

Janjua also makes the alternative—and ultimately unpersuasive—argument that an issue was "actually litigated" so long as there was a "fair opportunity" to litigate the issue.  But our precedent clearly lays out "actually litigated" and a "full and fair opportunity" to litigate as separate requirements, each of which must be met for issue preclusion to apply.  *See Oyeniran*, 672 F.3d at 806.  And although we have at least once characterized the necessity that a party have had a "full and fair" opportunity to litigate the issue as part of the "actually litigated" consideration, *see Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003), this was not to say that an issue was actually litigated *so long as* there was a full and fair opportunity to do so; rather, we explained that issue preclusion is  "inappropriate where the parties have not had a full and fair opportunity to litigate the merits of an issue." *Id.* (citing *Allen*, 449 U.S. at 94–95).  A full and fair opportunity was (and remains) a necessary condition for issue preclusion, but we never suggested that it was *sufficient* to satisfy the actually litigated requirement.  We have since clarified that the full and fair opportunity requirement is a separate step of the issue preclusion analysis.  *See Oyeniran*, 672 F.3d at 806; *Howard*, 871 F.3d at 1041 (quoting and

applying *Oyeniran*'s test); *Medina-Lara v. Holder*, 771 F.3d 1106, 1118 (9th Cir. 2014) (same). We reject Janjua's proposed rule because it conflates two distinct elements of the issue preclusion test.

Having determined that an issue was actually litigated if it was raised, contested, and submitted for determination by the parties, we now turn to the question of whether Janjua's terrorism-related inadmissibility was actually litigated here. Neither the question of whether MQM qualifies as a terrorist organization nor whether Janjua engaged in terrorist activity and was inadmissible as a result was raised, contested, or submitted for determination in Janjua's asylum proceedings.

To be sure, Janjua's membership in and work for the MQM were discussed at length at the merits hearing, including whether he had ever used violence or intimidation to further the organization's goals. Yet, these topics were explored for their relevance to Janjua's purported basis for persecution; no one raised, or even hinted at, these topics as potential grounds for inadmissibility under § 1182(a)(3)(B)(i). Neither party ever addressed whether the MQM was a Tier III terrorist group—this category did not exist at the time of the merits hearing, and no further argument was presented to the IJ after the statutory amendment. And neither party addressed whether Janjua's support for the MQM would make him inadmissible—which makes sense for the same reasons. While Janjua's work for the MQM was addressed in the asylum proceedings, the specific issue of whether he was inadmissible based on that work was not raised, contested, or submitted for determination. It was not actually litigated in Janjua's asylum proceeding, and issue preclusion does not apply.

Janjua's reliance on *Paulo v. Holder*, 669 F.3d 911 (9th Cir. 2011), is misplaced. There, the petitioner's eligibility for INA § 212(c) relief from removal was raised, contested, and submitted for determination in the first proceeding; in the second, the government advanced a new *argument* as to why he was ineligible. *See id.* at 917. Issue preclusion applied because "[t]he fact that a particular *argument* against Paulo's eligibility was not made by the government and not addressed by the district court does not mean that the *issue* of Paulo's eligibility for § 212(c) relief was not decided." *Id.* (emphases added). Here, however, the government's challenge to Janjua's admissibility in the adjustment of status proceeding is not merely a new *argument*; rather, the *issue* of terrorism-related inadmissibility was never disputed in the asylum proceeding. Thus, it was not actually litigated and issue preclusion cannot apply.

## CONCLUSION

For the foregoing reasons, we hold that an issue is "actually litigated" for purposes of issue preclusion when it is raised, contested by the parties, and submitted for determination in the prior proceeding. Because the issue of whether Janjua was inadmissible on terrorism-related grounds was not raised, contested, and submitted for determination at his asylum proceeding, it was not actually litigated. Issue preclusion does not apply.

**AFFIRMED.**