IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**GRAEME HANCOCK,**
*Petitioner,*

*v.*

**HON. WILLIAM J. O'NEIL, PRESIDING DISCIPLINARY JUDGE**,
*Respondent Judge,*

**STATE BAR OF ARIZONA,**
*Real Party in Interest.*

No. CV-21-0145-SA
Filed August 29, 2022

Special Action from the Office of the Presiding Disciplinary Judge
No. PDJ2019-9040
**JURISDICTION ACCEPTED, RELIEF GRANTED**

COUNSEL:

Dominic E. Draye (argued), Andrew F. Halaby, William E. Eye, Greenberg Traurig, LLP, Phoenix, Attorneys for Graeme Hancock

David L. Sandweiss, Senior Bar Counsel (argued), Kelly J. Flood, David E. Wood, State Bar of Arizona, Phoenix, Attorneys for State Bar of Arizona

J. Scott Rhodes, In Propria Persona, Phoenix, Attorney for Amicus Curiae J. Scott Rhodes

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, and PELANDER (RETIRED) joined.[*]

---

[*] Justice Kathryn Hackett King has recused herself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.), was designated to sit in this matter.

_____

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

**¶1** In this special action, we are asked to decide whether offensive issue preclusion applies in attorney disciplinary proceedings. The Arizona Rules of the Supreme Court governing attorney discipline give preclusive effect to two types of prior judgments in attorney disciplinary matters: (1) criminal convictions, Rule 54(g), and (2) attorney discipline imposed in other jurisdictions, Rule 54(h). Because our rules dictate when a prior judgment may have preclusive effect in attorney disciplinary proceedings, we hold that offensive issue preclusion does not apply. Therefore, a sanctions order in a prior lawsuit does not have preclusive effect in an attorney disciplinary proceeding.

## I. BACKGROUND

**¶2** This case arises from one of many lawsuits concerning Goodyear's G159 tire. The plaintiffs in the underlying action, the Haegers, suffered serious injuries when the front tires to their motor home failed. The Haegers sued Goodyear in state court, and Goodyear subsequently removed the case to federal district court.

**¶3** Goodyear appointed Basil Musnuff, an Ohio lawyer, as "national coordinating counsel" on all G159 cases across the country to oversee discovery requests, coordinate the search for documents, and draft responses. Goodyear hired Arizona attorney Graeme Hancock as local counsel.

**¶4** During discovery, the Haegers requested test records for the G159, but Goodyear, through its counsel, repeatedly denied the existence of such tests and otherwise refused to produce them. The Haegers and Goodyear settled on the first day of trial after extensive pre-trial litigation.

**¶5** Almost a year after the Haeger settlement, a newspaper article reporting on another G159 case mentioned testing data, the same data Goodyear and its counsel denied existed. The Haegers filed a motion for sanctions alleging discovery fraud. Following sanctions proceedings, the

district court issued a lengthy sanctions order against Goodyear, Musnuff, and Hancock, detailing each party's involvement in defrauding the court.[1]

**¶6**　　　　Subsequently, the State Bar of Arizona (the "Bar") initiated an investigation into Hancock's conduct.  Upon completing the investigation, the Bar recommended an Order of Probable Cause to the Attorney Discipline Probable Cause Committee.  The committee found probable cause, and the Bar filed a formal complaint against Hancock.  *See* Ariz. R. Sup. Ct. 47 (outlining attorney discipline procedural matters).

**¶7**　　　　At the disciplinary proceeding, the Presiding Disciplinary Judge ("PDJ") granted the Bar's motion for partial summary judgment, applying offensive non-mutual issue preclusion to prevent Hancock from relitigating the district court's fact findings.

**¶8**　　　　Hancock filed a petition for special action in this Court challenging the applicability of issue preclusion in Bar disciplinary proceedings.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.　　DISCUSSION

**¶9**　　　　"Application of issue preclusion is an issue of law, which we review de novo."  *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 180 ¶ 6 (2007).

## A.

**¶10**　　　　Issue preclusion is a judicial doctrine that, when applicable, prevents a party from relitigating an issue of fact decided in a prior judgment.  *Crosby-Garbotz v. Fell ex. rel. Cnty. of Pima*, 246 Ariz. 54, 55 ¶ 1 (2019).[2]  Offensive issue preclusion occurs when the party invoking the doctrine uses it as a sword against another party who lost on the issue in a prior judgment.  *See id.* at 60 ¶ 26.  Our Court, as well as the United States Supreme Court, has noted that offensive issue preclusion is "a situation that . . . present[s] different considerations" beyond the four elements state

---

[1] *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938 (D. Ariz. 2012), *aff'd*, 813 F.3d 1233 (9th Cir. 2016), *rev'd and remanded,* 581 U.S. 101 (2017).

[2] Issue preclusion is also known as collateral estoppel.  *Id.*

and federal law require for defensive issue preclusion.[3]  *Id.; see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31 (1979).[4]

**¶11**        The law of the jurisdiction of the court from which the underlying initial judgment issues determines whether that judgment has preclusive effect.  *In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69 ¶ 13 (2006).  But in federal diversity cases, such as the Haeger case, federal law incorporates "the law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  As a result, Arizona law governs the preclusive effect of a judgment from a District of Arizona federal court sitting in diversity.  And this Court is the ultimate authority on Arizona law, to which the federal courts must defer.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).  Thus, it is our duty to decide whether Arizona law would give effect to such a judgment.

---

[3] For defensive issue preclusion, federal and state law require that: (1) The issue at stake must be the same in both proceedings; (2) the issue must have been actually litigated and decided in the prior proceedings; (3) the party against whom the doctrine is to be invoked must have had a full and fair opportunity to litigate the issue; and (4) the issue must have been necessary to decide the merits of the prior action.  *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012)); *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986).

[4] Because offensive, non-mutual use of the doctrine may lead to perverse outcomes, federal courts employ a four-factor "fairness" test before giving a judgment preclusive effect on an issue when the parties are not identical in both suits and the party invoking the doctrine uses it offensively, that is as a sword, not a shield.  *See Parklane*, 439 U.S. at 330–32; *Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 52 (Pa. 2005) ("(1) [W]hether the plaintiff could have joined the earlier action; (2) whether the subsequent litigation was foreseeable and therefore the defendant had an incentive to defend the first action vigorously; (3) whether the judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the defendant; and (4) whether the second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result.") (summarizing *Parklane* fairness factors).

**¶12**        This Court is not only the ultimate authority on Arizona law, but also "the ultimate body wielding the State's power over the practice of law." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 360 (1977); *see also* Ariz. Const. art. 6, § 3 (entrusting this Court with administrative supervision over state courts); *Scheehle v. Justices of the Sup. Ct. of the State of Ariz.*, 211 Ariz. 282, 290 ¶ 31 (2005) (concluding that article 6, section 3 provides for this Court's "constitutional power over attorneys as officers of the court"). We are therefore not required to give preclusive effect to *any* prior judgment in an attorney disciplinary matter, other than that which is already provided under our rules or caselaw. Thus, in the exercise of our regulatory authority over the practice of law in this state, we hold as a matter of Arizona law that the doctrine of offensive issue preclusion does not apply to attorney disciplinary proceedings. Instead, our rules determine the preclusive effect of prior judgments in attorney disciplinary proceedings.

**B.**

**¶13**        The Arizona Supreme Court Rules governing attorney disciplinary matters do not explicitly reference issue preclusion. But the rules do enumerate grounds for discipline, and two grounds arise from prior judgments: (1) discipline for the conviction of a crime, Rule 54(g), and (2) discipline imposed by other jurisdictions, Rule 54(h). The practical effect of these subsections is that, if an attorney is convicted of a crime or disciplined by another jurisdiction, the attorney is precluded from relitigating whether he or she committed the underlying crime or ethical violation, subject to the provisions of Rule 57(b) in the context of discipline by another jurisdiction.

**¶14**        Although the practical effect of these subsections is effectively issue preclusion, Rules 54(g) and 54(h) do not apply the doctrine of issue preclusion. Rather, the rules prescribe the procedure. If an attorney is convicted of a crime or disciplined in another jurisdiction, then the attorney may be disciplined. The rules provide further instruction for recognizing and imposing discipline ordered in another jurisdiction:[5]

---

[5] The findings that would prevent the imposition of discipline stemming from discipline in another jurisdiction are in large part akin to the *Parklane* fairness factors. *See Parklane*, 439 U.S. at 330–32. Though we note these similarities, we refrain from characterizing our rules as permitting issue

> [T]he presiding disciplinary judge shall impose the identical or substantially similar discipline, unless bar counsel or respondent establishes by a preponderance of the evidence, through affidavits or documentary evidence, or as a matter of law by reference to applicable legal authority, or the presiding disciplinary judge finds on the face of the record from which the discipline is predicated, it clearly appears that:
>
> A. the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> B. there was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the presiding disciplinary judge could not, consistent with its duty, accept as final the other jurisdiction's conclusion on that subject; or
>
> C. the imposition of the same discipline would result in grave injustice; or
>
> D. the misconduct established warrants substantially different discipline in this state.

Ariz. R. Sup. Ct. 57(b)(3). Thus, when a United States District Court avails itself of the federal attorney disciplinary process, *see* D. Ariz. LRCiv 83.2, we will recognize and impose its decision so long as the attorney has the opportunity to explain why he or she should not be bound by the federal court's disciplinary order.[6] But the judgment here was not an exercise of disciplinary authority by the district court; this is an order for sanctions in a civil case.

---

preclusion in certain cases. Issue preclusion is a well-studied doctrine with its own body of caselaw, which has no bearing on our rules.

[6] Federal and state courts have independent disciplinary authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."); *In re Smith*, 189 Ariz. 144, 146 (1997) (explaining that this Court determines who can practice law in Arizona and under what conditions).

**¶15** Under the interpretive canon *expressio unius est exclusio alterius*, "the expression of one item implies the exclusion of others." *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019). Our rules provide only two instances in which a prior judgment would effectively prevent an attorney from relitigating the underlying facts in a disciplinary hearing. Therefore, under our rules, the doctrine of issue preclusion is not applicable to attorney disciplinary hearings in Arizona; rather, our rules define when a prior judgment has preclusive effect.

**¶16** Our caselaw's requirement for independent fact finding in attorney disciplinary proceedings supports this conclusion. *In re Levine*, 174 Ariz. 146, 150 (1993) ("In reviewing disciplinary proceedings[,] . . . [this Court is] an independent trier of both fact and law . . . ."); *In re Wolfram*, 174 Ariz. 49, 52 (1993) ("In disciplinary proceedings, this [C]ourt acts as an independent trier of fact and law in the exercise of our supervisory responsibility over the State Bar."). Giving a prior judgment preclusive effect, other than as provided by our rules, abrogates this Court's authority and duty to act as an independent trier of fact.

**¶17** Moreover, if the Bar relied on a *state* court sanctions order to discipline Hancock, such an order would not have preclusive effect under our rules because it is neither a criminal conviction nor discipline from another jurisdiction. It is incongruous to apply offensive issue preclusion to a federal court order where we would not apply it to an identical state court order, especially in a matter where state law applies.

**¶18** The Bar nonetheless contends that rejecting issue preclusion here breaks from Arizona courts' treatment of issue preclusion in disciplinary proceedings of other regulated professions, positing that today's holding "exempt[s] lawyers from a rule that applies to everyone else." The Bar warns that this will "create a public perception that lawyers form a clubby group of elitists who rig laws in our self-interest, knowing we can count on friendly courts for shelter."

**¶19** But any differential treatment of lawyers, if it exists, comes from our constitutional authority under article 6, section 3 of the Arizona Constitution. We have administrative supervision over the courts, *id.*, and lawyers are officers of the court, *Scheehle*, 211 Ariz. at 290 ¶ 31. Under this authority, we have crafted rules governing the attorney disciplinary process—rules that, of course, are inapplicable to other professions. The rules governing disciplinary matters are the result of a carefully crafted

rulemaking process. This process benefits greatly from public input and can readily be modified when appropriate.

**¶20** Furthermore, nothing in our decision today precludes the Bar from pursuing its prosecution and using the sanctions proceeding in the district court as evidence. The inapplicability of the issue preclusion doctrine in attorney disciplinary matters does not render collateral proceedings irrelevant to the resolution of disciplinary proceedings. A PDJ is not bound by the rules of evidence and "may conduct the hearing in any manner that will achieve substantial justice." Ariz. R. Sup. Ct. 61(c)(2)(B). Although the Bar cannot prevent an attorney from relitigating issues determined in a sanctions order, a PDJ is permitted to admit transcripts and other evidence of collateral proceedings and credit the persuasiveness of such evidence, so long as the PDJ affords an attorney the opportunity to contest such evidence and introduce additional evidence as appropriate.[7]

**¶21** Moreover, we reject the Bar's assertion that our holding exempts lawyers from a rule that applies to everyone else. The Bar cites two cases involving the use of issue preclusion in disciplinary proceedings for other regulated professions to support this argument: *In re Marquardt*, 161 Ariz. 206 (1989), and *Wetzel v. Ariz. State Real Est. Dep't*, 151 Ariz. 330 (App. 1986). Both cases are inapposite.

**¶22** In *Marquardt*, an Arizona superior court judge was convicted in a Texas state court of possessing marijuana. 161 Ariz. at 207. In a subsequent judicial misconduct case, this Court ruled that the judge was bound by the criminal conviction and was precluded from arguing that he did not intend or know that he was in possession of the drug. *Id.* at 213. Judicial disciplinary proceedings are different from attorney disciplinary proceedings and are subject to different rules. *See* Ariz. Const. art. 6.1, §§ 1–3 (establishing a judicial conduct commission and prescribing parameters for suspension or disqualification of state judges); Ariz. Comm'n on Jud. Conduct R. 20–34. Nevertheless, if attorney disciplinary rules governed, this Court would still have given the criminal conviction preclusive effect because Rule 54(g) allows for the use of a criminal

---

[7] As to the admissibility of the collateral court order finding improper attorney conduct and conclusive reliance thereon, because a PDJ is not bound by the order, we struggle to imagine a scenario in which admitting the order achieves substantial justice when the evidence from the proceeding is available.

conviction as a basis for attorney discipline. *See* Ariz. R. Sup. Ct. 54(g). Thus, Marquardt's criminal conviction would have had the same preclusive effect under our rules if he was facing attorney discipline rather than judicial misconduct charges.

**¶23**        *Wetzel* involved a real estate broker who was also a recently disbarred lawyer. 151 Ariz. at 332. The Arizona State Department of Real Estate (the "Department") revoked the broker's real estate license based solely on this Court's disbarment orders. *Id.* After exhausting his administrative remedies, the broker challenged the Department's use of offensive non-mutual issue preclusion in court. *Id.* The court of appeals affirmed. *Id.* at 333–34.[8]

**¶24**        The hearing officer gave the disbarment orders preclusive effect pursuant to Department rules. *Id.* at 332. This is markedly different from the PDJ here who felt obliged to apply issue preclusion *under federal law*. Other administrative agencies are free to adopt procedural rules or apply judicial doctrines in their discretion; here the issue is the PDJ's application of *our* rules for attorney disciplinary proceedings.

**¶25**        Unlike *Marquardt* and the case at hand, *Wetzel* involved an administrative proceeding in a profession over which we have no regulatory authority. Here, we *are* vested with authority over attorney disciplinary proceedings. Ariz. Const. art. 6, § 3; *Scheehle*, 211 Ariz. at 290 ¶ 31. And our rules speak on the matter. We hold that under our rules, issue preclusion is not applicable in attorney disciplinary proceedings; only criminal convictions and disciplinary orders from other jurisdictions may be given preclusive effect.

---

[8] Although *Wetzel* approved the use of offensive, non-mutual issue preclusion, the court noted that in Arizona, non-mutual issue preclusion "has been limited to the defensive use of the doctrine." *Id.* (citing *Standage Ventures, Inc. v. State*, 114 Ariz. 480 (1977)). Indeed, in *Standage Ventures*, this Court expressly prohibited offensive use of issue preclusion. 114 Ariz. at 484. Other courts have noted that the law is unclear in Arizona. *Am. Fam. Mut. Ins. Co. v. Clancy*, 512 F. App'x 674, 676 (9th Cir. 2013) (noting disagreement between *Standage* and *Wetzel*). Because our rules, rather than the issue preclusion doctrine, govern here, this case does not require us to clarify this point.

## III.    CONCLUSION

¶26        We accept jurisdiction and grant relief, vacating the PDJ's order and remanding for further proceedings.