**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-2253**

VEIN & WELLNESS GROUP, LLC,

Plaintiff - Appellant,

v.

XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Mark Coulson, U.S. Magistrate Judge. (1:22-cv-00397-JMC)

Argued: December 8, 2023                    Decided: June 20, 2024

Before KING and HARRIS, Circuit Judges, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge King and Judge Alston joined.

**ARGUED:** James C. Pistorino, PARRISH LAW OFFICES, Pittsburgh, Pennsylvania, for Appellant. Anna M. Stapleton, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David B. Goroff, Chicago, Illinois, Andrew C. Gresik, FOLEY & LARDNER LLP, Madison, Wisconsin, for Appellant. Brian M. Boynton, Principal Deputy Assistant Attorney General, Alisa B. Klein, Appellate Staff,

Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Samuel R. Bagenstos, General Counsel, Michele L. Purdue, Chief Counsel, Region III, Eric S. Wolfish, Assistant Regional Counsel, Office of the General Counsel, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, Pennsylvania, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

The plaintiff in this case, Vein & Wellness Group, LLC ("VWG"), challenges a decision by the Secretary of the United States Department of Health and Human Services denying Medicare coverage for a novel vascular treatment performed on numerous patients between 2014 and 2015. VWG contends that the Secretary is barred by collateral estoppel from denying coverage for these surgeries.

We disagree. Because VWG cannot establish that the Secretary's ground for coverage denial was identical to an issue previously litigated, collateral estoppel does not bar the agency's decision. Accordingly, we affirm the district court's ruling in the Secretary's favor.

## I.

### A.

This case involves claims for benefits under Medicare Part B, a "voluntary insurance program to provide medical insurance benefits . . . for aged and disabled individuals" financed through enrollee monthly payments and government funding. 42 U.S.C. § 1395j; *see id.* §§ 1395k–1395w-6. The Medicare statute specifically excludes from coverage items and services that are "not reasonable and necessary for the diagnosis or treatment of illness or injury." *Id.* § 1395y(a)(1)(A). Whether a particular medical service qualifies for coverage under this standard is determined by the Secretary of the Department of Health and Human Services ("HHS"), empowered by Congress to administer the Medicare

3

scheme. *Id.* § 1395ff(a), 1395ff(b); *see also Almy v. Sebelius*, 679 F.3d 297, 299-300 (4th Cir. 2012).

At issue in this case is how the Secretary makes that determination and, specifically, the preclusive effect of a preliminary coverage finding made by an HHS administrative law judge ("ALJ"). For context, we outline here the multi-step process the agency employs to make and review coverage determinations.

When a Medicare provider submits a claim for payment, a private contractor engaged by the Secretary will generally conduct an initial review. *See Almy*, 679 F.3d at 299-300 (overview of coverage process). If the provider is dissatisfied with the contractor's initial determination, it can pursue a five-step appeal process. *Id.* at 300. First, the provider can seek a "redetermination" by the same contractor. 42 U.S.C. §§ 1395ff(a)(3), 1395ff(b)(1)(A); 42 C.F.R. § 405.940. Second, if still unsuccessful, it can obtain "reconsideration" by a separate "qualified independent contractor." 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960.

That brings us to the third and fourth levels of review, directly at issue in this case. At the third level, a provider whose claim has been denied may request a hearing and determination by an ALJ. 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1000. The Secretary may or may not participate in that hearing, at his discretion. 42 C.F.R. § 405.1008. The ALJ's determination is subject to de novo review – level four – by the Medicare Appeals Council ("MAC"), at the request of either party to the ALJ proceedings. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1102. If the Secretary did not participate at the ALJ level, the MAC will hear his appeal only if the ALJ's decision relied on an "error of law" or

4

"presents a broad policy or procedural issue." 42 C.F.R. § 405.1110(c)(2). The MAC's decision is the final decision of the agency, 42 C.F.R. § 405.1130, and a party can bring a civil action in federal court for review of that decision under 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)).

## B.

The plaintiff in this case, Vein & Wellness Group, LLC ("VWG"), is a corporation that specializes in vascular treatments. Between 2014 and 2015, VWG performed over 150 vein surgeries known as "mechanical occlusion with chemical assistance" – or "MOCA" procedures – on Medicare beneficiaries. When VWG performed the MOCA procedure in 2014, the technique was still considered novel, and it had not been assigned a specific billing code for purposes of Medicare coverage review.

VWG filed a series of claims for its 150-plus MOCA treatments, and the agency consolidated the claims for ease of decision-making. This case picks up at the third step of the appeal process – the ALJ stage – where VWG's claims resulted in two separate ALJ decisions. In the first, which we will refer to as "*ALJ I*," an ALJ reviewed an initial set of claims and granted coverage. That decision rested on two findings. First, the ALJ found that VWG had indeed treated patients with the MOCA procedure – and not, as the agency contractors had found, with a largely cosmetic treatment known as sclerotherapy. And second, VWG had properly used the "closest appropriate" billing code in the absence of one designated specifically for the MOCA procedure. J.A. 67. The Secretary did not participate in this ALJ review and did not appeal the ALJ's positive coverage determination to the MAC. Jumping ahead just a little, it is this favorable decision – *ALJ I* – that VWG

5

argues should have preclusive effect on the Secretary's ultimate coverage determinations with respect to its MOCA procedures.[1]

The second ALJ decision – "*ALJ II*"– also came out in VWG's favor, at least initially, with a different ALJ granting coverage for the VWG claims that are the subject of the instant appeal.[2]  Again, the ALJ found that VWG's patients were treated with the MOCA procedure, not sclerotherapy, and that the services were billed with a proper code. In this case, however, the ALJ also found that the MOCA procedures were medically necessary to treat the beneficiaries' varicose veins.  As in *ALJ I*, the Secretary did not participate in the *ALJ II* proceedings.

But this time, the Secretary did seek to appeal the *ALJ II* decision to the Medicare Appeals Council.  According to the Secretary, the *ALJ II* decision failed to consider or apply the proper standard in determining the medical reasonableness and necessity of the MOCA procedures.  *Cf.* 42 U.S.C. § 1395y(a)(1)(A) (excluding coverage for services that are "not reasonable and necessary" for medical treatment).  Specifically, the ALJ did not

---

[1] What we are terming "*ALJ I*" technically refers to three separate decisions issued between July and September 2021 by ALJ Andrea Barraclough, adjudicating three separate sets of claims.  *See* J.A. 61, 70, 85.  The ALJ denied coverage of just one claim with respect to a single beneficiary, based on the absence of treatment records indicating the MOCA procedure was undertaken.  But the decisions are otherwise substantively similar and so we treat them as one for purposes of this opinion.

[2] "*ALJ II*" also refers to three separate decisions adjudicating three separate batches of claims.  All were issued in August 2021 by a different ALJ, Lori L. May.  *See* J.A. 204, 212, 282.  Here again, the ALJ denied coverage as to a handful of beneficiaries due to a lack of treatment records.  And again, the decisions are substantively similar, so we treat them together as *ALJ II* for ease of reference.

consider provisions of the Medicare Program Integrity Manual ("MPIM") dictating that a service should be covered only if it is found to be "safe and effective, not experimental or investigational, and appropriate based on the strongest evidence possible." *See* J.A. 165-66 (describing MPIM provisions); *see also* J.A. 156 (quoting MPIM, Ch. 13 § 13.5.1).[3]

The MAC agreed with the Secretary, finding that the *ALJ II* decision was materially erroneous as a matter of law because it failed to consider the relevant MPIM provisions. The MAC did not dispute *ALJ II*'s determination – tracking *ALJ I*'s – that VWG had submitted its claims with then-appropriate codes, or that it had (in all but a few cases) demonstrated that its patients were treated with the MOCA procedure. The problem was that the ALJ had not gone on to consider whether the MOCA procedure was considered too "experimental, investigational, or unproven" at the time of treatment to qualify for coverage under the MPIM standard. J.A. 166. Nor had VWG submitted to the ALJ the kind of evidence that could support a finding that its services were "not experimental or investigational," like published and authoritative studies or other evidence of "general acceptance by the medical community." *Id.* (citing MPIM, Ch. 13, § 13.7.1). Accordingly, the MAC denied coverage.

**C.**

---

[3] This individual inquiry into a service's medical reasonableness and necessity is required when, as here, there has been no "national coverage determination" made by the Secretary and binding throughout the Medicare system or "local coverage determination" made by a private insurance carrier contracting with the Secretary that it will cover a service. *See Almy*, 679 F.3d at 299-300 (citing 42 U.S.C. §§ 1395ff(f)(1)(B), 1395ff(f)(2)(B)).

VWG then filed this action for judicial review in federal district court.  *See* 42 U.S.C. § 1395ff(b)(1)(A); 42 U.S.C. § 405(g) (providing for review of Secretary's "final decision" under "substantial evidence" standard).[4]  As relevant here, VWG argued that the decision in *ALJ I*, granting coverage for its MOCA procedures, collaterally estopped the Secretary from relitigating the coverage determination in *ALJ II*.  The district court disagreed, affirming the final administrative decision of the MAC and entering summary judgment for the Secretary.  *Vein & Wellness Grp., LLC v. Becerra*, No. 1:22-CV-00397-JMC, 2022 WL 9361896, at *1, *4-7 (D. Md. Oct. 14, 2022).[5]

The court recognized that under the Supreme Court's decision in *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-09 (1991), an administrative agency's final decision will presumptively have the same issue-preclusive effect as a court decision would under common-law principles.  *Vein & Wellness*, 2022 WL 9361896, at *4.  But when the "interpretation of a statute is at hand," the ultimate question is whether administrative estoppel is "intended by the legislature," and the presumption in favor of issue preclusion can be overcome if there is an evident statutory purpose to the contrary.  *Id.* at *5 (quoting *Astoria*, 501 U.S. at 108) (cleaned up).  And here, the district court concluded, the exhaustive five-step administrative review structure laid out by Congress was incompatible with the application of collateral estoppel principles to ALJ decisions,

---

[4] The parties voluntarily consented to a magistrate judge's jurisdiction.

[5] The court also rejected additional claims raised by VWG, including claims that the agency had violated its own regulations and acted arbitrarily and capriciously in denying coverage.  VWG does not press those claims on appeal.

*id.* at *5, overcoming the presumption. *Id.* at *6 (citing *Astoria*, 501 U.S. at 108); *see also Astoria*, 501 U.S. at 110 (finding that structure of agency review process "carries an implication" that Congress did not intend administrative preclusion). The court focused especially on the non-final nature of ALJ decisions, given no precedential effect by the agency and reviewed de novo on appeal by the MAC. *See id.* at *5-6. Given the agency's "multi-layer scheme of internal claim review," the court reasoned, "[i]t is difficult to conclude that . . . the early stage of ALJ review is the point at which an issue becomes final for purposes of collateral estoppel." *Id.* at *5 (quoting *Christenson v. Azar*, No. 20-C-194, 2020 WL 3642315, at *6 (E.D. Wis. July 6, 2020) (reaching same result)).

VWG timely appealed.

## II.

We review de novo the district court's grant of summary judgment. *Pledger v. Lynch*, 5 F.4th 511, 524 (4th Cir. 2021). We likewise review the application of collateral estoppel de novo. *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019).

On appeal, VWG continues to argue that the Secretary is estopped by *ALJ I*'s favorable coverage determination from seeking a different result in the *ALJ II* proceedings: The first ALJ ruled for VWG on coverage, and that prior determination, VWG says, has issue preclusive effect on any future coverage claims involving the same legal or factual

9

issues brought by the same party, VWG.[6]  According to VWG, the *Astoria* presumption giving agency decisions ordinary preclusive effect applies in this case, and the district court erred in holding that Congress abrogated that presumption through the Medicare statute's review process.  Indeed, VWG suggests, the district court's decision strays so far from congressional intent that it poses a "serious risk to America's judicial system," contravening the constitutional avoidance, non-delegation, and major questions doctrines. The Secretary, for his part, argues that the district court properly declined to apply the *Astoria* presumption.  Although the Secretary's rationale is slightly different than the district court's, he agrees with that court's bottom line:  The structure of the Medicare review system makes clear that Congress intended to override the ordinary principles of collateral estoppel, at least when it comes to ALJ decisions.

We need not resolve the parties' debate over the scope and applicability of the *Astoria* presumption.  Instead, we can dispose of this case on the narrower alternative ground also pressed by the Secretary:  Even assuming the *Astoria* presumption applies, the favorable coverage decision in *ALJ I* would not preclude a denial of coverage on the *ALJ II* claims.  *See Moore v. Frazier*, 941 F.3d 717, 725 (4th Cir. 2019) (recognizing we may affirm a district court's decision "on any ground apparent on the record").  What *Astoria* presumes is not that any given agency decision will *have* preclusive effect, but only that

---

[6] VWG's argument is limited in one important respect, in that it would give preclusive effect to *ALJ I* only in future proceedings involving the same parties – that is, the Secretary and VWG – and not in coverage determinations involving other medical providers.  *See United States v. Mendoza*, 464 U.S. 154, 158 (1984) (rejecting application of nonmutual offensive collateral estoppel against the government).

the ordinary rules of collateral estoppel will apply. *Astoria*, 501 U.S. at 107-08; *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 151 (2015) (referring to "those cases in which the ordinary elements of issue preclusion are met"). And here, that means that the Secretary's denial of coverage on *ALJ II* claims is not precluded, because it rests on a ground that is not identical to an issue litigated and decided in *ALJ I*. *See B & B Hardware*, 575 U.S. at 153 (administrative preclusion applies "where the issues in the two cases are indeed identical and the other rules of collateral estoppel are carefully observed" (internal quotation marks omitted)).

The parties do not dispute the basic principles of collateral estoppel. Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom issue preclusion is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (cleaned up). Accordingly, the party invoking collateral estoppel – here, VWG – "must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Id.*

We agree with the Secretary that VWG cannot establish the first and second elements of collateral estoppel: that the issue sought to be precluded is identical to one previously litigated and decided. As described above, *ALJ I* – the decision to which VWG

11

would give preclusive effect – addressed and decided two discrete issues, finding that VWG had actually performed the MOCA procedure (and not cosmetic sclerotherapy) and had used an appropriate billing code for its then-novel procedure.  But in appealing *ALJ II*, the Secretary questioned neither of those determinations.  Instead, the Secretary's appeal and the MAC decision denying coverage rested on an entirely different issue:  the failure of *ALJ II* to consider the proper MPIM standard in assessing medical reasonableness and necessity, which would have entailed an inquiry into whether the MOCA procedure was not "experimental or investigational."  J.A. 165.  The issue on which the Secretary's coverage denial rests, in other words – the absence of record evidence of scientific or medical-community acceptance of the MOCA procedure, *see* J.A. 166 – was never decided in *ALJ I*, and so the Secretary cannot have been estopped from arguing it in *ALJ II*.  *See B & B Hardware*, 575 U.S. at 154 ("Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." (cleaned up)).

Nor was the MPIM standard ever "litigated" in *ALJ I*.  Under the first element of collateral estoppel, preclusion is appropriate only where the identical issue was "previously litigated," *Sedlack*, 134 F.3d at 224 – "that is, contested by the parties and submitted for determination by the court." *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987); *see* Restatement (Second) of Judgments § 27 (1982) (issue must be "properly raised, by the pleadings or otherwise, and . . . submitted for determination").  Whether the MOCA procedure satisfied the "not experimental or investigational" MPIM standard was not litigated or contested in *ALJ I* for the simple reason that the Secretary did not participate in

12

the *ALJ I* proceedings. That the Secretary was *entitled* to participate in those proceedings, as VWG argues, is true but beside the point; collateral estoppel requires that an issue actually be litigated before its resolution will be treated as preclusive. *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 593 (1974).[7]

At bottom, VWG's argument for collateral estoppel is that when *ALJ I* determined the "larger issue" of Medicare coverage and granted reimbursement for the MOCA procedure, it must also have decided, if only implicitly, the "sub-issue" of whether the procedure was "reasonable and necessary," *see* 42 U.S.C. § 1395y(a)(1)(A), consistent with the MPIM standard. But that is not how collateral estoppel works. A judgment in a prior action – here, the grant of coverage in *ALJ I* – operates as an estoppel not as to issues which "might have," or even should have, "been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding

---

[7] VWG contends that the collateral estoppel elements have been satisfied because the Secretary had a "full and fair opportunity" to litigate in *ALJ I*, even if he did not avail himself of that opportunity. But that argument conflates two distinct collateral estoppel requirements. The threshold requirement – element one in the *Sedlack* formulation – is that the issue sought to be precluded is "identical to one *previously litigated*." 134 F.3d at 224 (emphasis added). As discussed above, the issue sought to be precluded here – application of the MPIM standard to the MOCA procedure – was never litigated in *ALJ I*, so VWG's case for preclusion falters at this first step. The "full and fair opportunity" requirement – *Sedlack*'s element five, *id.* – comes into play if an issue *has* been previously litigated and decided: Even then, a party against whom collateral estoppel is asserted may still prevail if the prior forum did not provide a "full and fair opportunity" for that party to make its case. *See Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) (noting that collateral estoppel may not apply "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation"); *see also Janjua v. Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019) (explaining difference between "actually litigated" and "full and fair opportunity" requirements).

or verdict was rendered." *Sea-Land*, 414 U.S. at 593 (cleaned up); *see Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (holding, in immigration context, that a grant of asylum does not preclude the government's subsequent litigation of an asylum requirement neither litigated nor addressed in the original action).[8] We cannot simply assume, as VWG urges, that the ALJ in *ALJ I* took it upon herself to render a (silent) decision under the MPIM standard; indeed, the very basis for the MAC's reversal in *ALJ II* was the *failure* of the ALJ to consider the MPIM standard, and on that score, *ALJ I* appears to be no different. A finding that a medical service like the MOCA procedure is "not experimental or investigational" may be *necessary* to a proper determination in favor of Medicare coverage, satisfying requirement three of the *Sedlack* taxonomy. *See* 134 F.3d at 224 (listing as element three that "determination of the issue must have been a critical and necessary part of the decision in the prior proceeding"). But that does not mean that the issue was *in fact litigated and decided* in the prior action, satisfying requirements one and two. *See Janjua*, 933 F.3d at 1066 (explaining that treating as preclusive an issue "*implicitly* raised" in a prior proceeding would conflate the "necessarily decided" and "actually litigated" requirements).

---

[8] *Janjua* is not the only case addressing this issue in the immigration context. Arguments exactly analogous to VWG's argument here – that a finding of asylum eligibility necessarily and implicitly decides *all* requirements for asylum for preclusion purposes, including those neither litigated nor addressed in the prior proceeding – have been consistently rejected by the courts. *See Fofana v. Mayorkas*, 4 F.4th 668, 671-72 (8th Cir. 2021); *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1340-42 (11th Cir. 2021).

14

In sum, we may assume, without deciding, that when Congress enacted the Medicare program, it "legislated with an expectation that the principle [of collateral estoppel] will apply" to final administrative determinations regarding coverage. *See Astoria*, 501 U.S. at 108. That would still require VWG to establish that under ordinary rules of collateral estoppel, the favorable coverage decision in *ALJ I* precluded the denial of its coverage claims in *ALJ II*. Because VWG cannot show that crucial elements of the collateral estoppel test have been met, the district court properly declined to give *ALJ I* preclusive effect. On that ground, we affirm the judgment of the district court.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*